Thomas L. KRAUSE, Sr.,
Plaintiff–Appellee/Cross–Appellant,

v.

DRESSER INDUSTRIES, INCORPORATED, a foreign corporation doing business in Oklahoma, Defendant–Appellant/Cross–Appellee.

Nos. 88–2559, 88–2642.

United States Court of Appeals,
Tenth Circuit.

July 23, 1990.

Terry A. Hall (Page Dobson and John R. Denney, also of Holloway Dobson Hudson and Bachman with him on the briefs) Oklahoma City, Okl., for defendant-appellant/cross-appellee.

Clell I. Cunningham III (Janice M. Dansby, also of Miller, Dollarhide, Dawson & Shaw with him on the briefs) Oklahoma City, Okl., for plaintiff-appellee/cross-appellant.

Before LOGAN and BALDOCK, Circuit Judges, and SAFFELS, District Judge.*

* The Honorable Dale E. Saffels, United States District Judge for the District of Kansas, sitting by designation.

1. Krause's ERISA claim sought the same basic relief as his ADEA claim—back pay and lost pension benefits—and the jury awarded the

LOGAN, Circuit Judge.

Defendant Dresser Industries, Inc. (Dresser) appeals from judgment entered on a jury verdict for plaintiff Thomas L. Krause on claims under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. ch. 14, the Employee Retirement Income Security Act (ERISA), 29 U.S.C. ch. 18, and for breach of an implied contract of tenured employment.

Krause began his employment with Dufek Oilwell Service District as a file clerk in 1958. Dufek was acquired by the Magcobar division of Dresser in 1960, and Krause was transferred to Oklahoma City, where he worked until 1968, advancing to the position of senior billing clerk. In 1968, Krause was transferred to Shreveport, Louisiana, where he was promoted in 1969 to area administrative manager and controller, the highest accounting management position for the South Louisiana area of Magcobar. He remained in that position until 1983, when the Magcobar controller offices were reduced from eight to three with a general cutback in accounting personnel. Krause was then transferred to Oklahoma City, where he filled an area accountant position, one step below his former position. In 1986, there was another reduction in force in which Krause was terminated.

Krause brought this suit alleging that (1) he was terminated as a result of age discrimination, (2) his termination was motivated by an intent to deny him certain pension benefits in violation of ERISA,[1] and (3) he was terminated in breach of an implied promise of tenured employment. The jury returned a verdict for plaintiff on all three claims, and Dresser appeals.

## I

### A

Dresser challenges the sufficiency of the evidence to support a jury verdict on

same damage amounts on both claims. Apparently recognizing the bar to Krause's recovering double damages, the court entered a single judgment for both claims. Because we uphold Dresser's liability on the ADEA claim, we do not reach the ERISA arguments.

age discrimination. Of course, we can disturb that verdict only if the evidence so conclusively favors defendant that reasonable jurors could not arrive at a contrary verdict. *See EEOC v. University of Oklahoma*, 774 F.2d 999, 1001 (10th Cir.1985), *cert. denied*, 475 U.S. 1120, 106 S.Ct. 1637, 90 L.Ed.2d 183 (1986). We hold that Krause presented sufficient evidence of age discrimination to · support the jury's verdict.

The evidence showed that Magcobar's vice-president and controller, Bobby Kennedy, issued a directive to Krause's supervisor, Richard Schaper, that due to the reduction in force, Schaper could retain only one other accountant in his office. Krause and Will Bradford, the son of a Dresser senior vice-president, were the only other accountants in the office. Bradford was twenty-nine years old at the time and had been employed by Magcobar for six years. Both were doing adequate work, but Schaper decided to terminate Krause and retain Bradford. As Dresser admits, Krause established his prima facie case of age discrimination by showing that he (1) was fifty-two years old when he was discharged, and thus, within the protected age group, (2) was doing satisfactory work, (3) was discharged despite the adequacy of his work, and (4) a younger employee was retained. *See Lucas v. Dover Corp.*, 857 F.2d 1397, 1400–01 (10th Cir.1988).

Schaper proffered as justification for his decision that Bradford was more efficient, had better communication skills, and was less resistant to new computer applications. These are, of course, all legitimate reasons to choose Bradford over Krause. Nevertheless, the jury was entitled to disbelieve these proffered reasons or infer that age was also a determining factor in the decision, if there was contrary evidence upon which it could rely. Other than the inference of discrimination inherent in Krause's prima facie case, Schaper testified that although seniority was normally a factor to be weighed in favor of retention of an employee, seniority was not considered in Krause's termination. III R. 207–08. Dresser offered Bradford's various computer skills as a justification for its decision, but many of those skills were attained through Dresser training only after Krause was terminated, *id.* at 182–83 (Bradford testimony), 255–56 (Schaper testimony). Krause also presented evidence of a long and stellar career with Magcobar, with no complaints in those areas offered to justify his termination.

Admittedly, this evidence is entirely circumstantial and . very thin. Krause is not required, however, to present direct evidence of discriminatory intent. *United States Postal Serv. Bd. of Governors v. Aiken*, 460 U.S. 711, 714 n. 3, 717, 103 S.Ct. 1478, 1481 n. 3, 75 L.Ed.2d 403 (1983). He is only required to show "that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). We believe that a reasonable jury could have disbelieved Dresser's contention that age was not a determining factor in Krause's termination, as this jury obviously did.

### B

■ Dresser urges on appeal that the evidence was insufficient to support the jury's damage award. The district court instructed the jury that Krause could recover damages only up to the date it found Krause *would* have been terminated for a nondiscriminatory reason. Dresser contends that damages should be limited to the point in time it *could* have terminated Krause for a nondiscriminatory reason. But this argument proves too much, for Dresser *could* have terminated Krause for a nondiscriminatory reason when it did terminate him. Even though the Oklahoma City office was closed one month after Krause's termination and the Magcobar division ceased doing business seven months later, both Schaper and Bradford retained positions with Dresser. Therefore, the jury could conclude that Krause also would have been retained if Dresser had not discriminatorily discharged him.

■ Dresser argues that Krause was not qualified to testify to the. amount his

pension benefits were reduced because of his premature discharge. At trial, defense counsel declined to voir dire plaintiff as to his competence on these issues, opting instead to test the weight of the evidence on cross-examination. III R. 161–62. Therefore, we will not allow Dresser now to challenge Krause's competence.

■ Dresser also contends that the jury's award for lost pension benefits exceeded Krause's own evidence. But as the district court noted, the figure that Krause produced at trial was an example of the extra benefits plaintiff would have received had he worked only three years more to age fifty-five. Plaintiff testified, however, that he fully intended to work to age sixty-five. The jury had before it ample evidence on the workings of the pension plan, and we will not second guess the manner in which it arrived at lost pension benefits.

### C

■ The jury not only found that Krause's age was a determining factor in Dresser's decision to terminate him, but also found that age was the predominant factor in that decision, thus entitling Krause to liquidated damages under 29 U.S.C. § 626(b) for a willful violation. *See Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1551 (10th Cir.1988). The district court, however, granted Dresser's motion for judgment notwithstanding the verdict with regard to willfulness, finding that reasonable minds could not conclude that age was the predominant factor in plaintiff's termination. Krause cross-appeals that ruling.

*Anderson v. Phillips Petroleum Co.*, 861 F.2d 631, 635–37 (10th Cir.1988), illustrates that evidence sufficient to support a jury verdict of age discrimination in a disparate treatment case will not necessarily support a willfulness verdict. In *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1159 & n. 5 (10th Cir.1990), we explained that "something more" is required to support a willfulness verdict. We agree with the district court that the evidence in this case was too thin to supply an inference that age was the predominant factor in Krause's termi-

nation. *See also Bethea v. Levi Strauss & Co.*, 827 F.2d 355, 358–59 (8th Cir.1987) and *Gilliam v. Armtex, Inc.*, 820 F.2d 1387, 1389–91 (4th Cir.1987) (relied upon in *Cooper*, 836 F.2d at 1550–51).

### II

### A

■ Dresser contends that there was insufficient evidence from which the jury could conclude that Dresser breached its employment contract with Krause. The district court submitted Krause's contract claim to the jury on a theory of implied contract for permanent employment or tenured job security, based upon the Oklahoma Supreme Court's general approval of the doctrine in *Hinson v. Cameron*, 742 P.2d 549, 554–57 (Okla.1987). In *Hinson*, the court stated:

> "Factors which have been isolated as critical to evaluate whether an implied contract right to job security exists are: (a) evidence of some 'separate consideration' beyond the employee's services to support the implied term, (b) longevity of employment, (c) employer hand-books and policy manuals, (d) detrimental reliance on oral assurances, pre-employment interviews, company policy and past practices and (e) promotions and commendations."

*Id.* at 554–55 (footnote omitted). Our court, in applying *Hinson* and *Langdon v. Saga Corp.*, 569 P.2d 524 (Okla.Ct.App. 1977), emphasized that inducement and reliance seem to be the hallmarks of the Oklahoma implied contract for tenured job security, and "[t]he inquiry is essentially one of fact to be resolved by a jury" upon consideration of "all the facts and circumstances ... [but] the promises must be definite, not just vague assurances." *Williams v. Maremont Corp.*, 875 F.2d 1476, 1481 (10th Cir.1989).

Krause presented evidence of his long working history with defendant, his many promotions and commendations, and Dresser's general policy favoring more senior and experienced employees. He also presented evidence that when Dresser's

Louisiana office was closed, he transferred to the Oklahoma City office only upon express representations that any further reductions in force would be accomplished by first terminating employees with less seniority. Krause testified that he passed up other employment opportunities in order to build his seniority with Dresser.

Viewed in the light most favorable to Krause, we believe this evidence established an implied promise by Dresser that Krause would not be terminated in a reduction in force until less senior employees were terminated. *See Hinson,* 742 P.2d at 555 n. 20 ("Examples of the implied-in-law contract theories ... are: ... detrimental reliance followed by turning down offers of other employment, ... moving after being lured by an indication of lengthy employment, ... implied or express promises about job security...."); *Langdon,* 569 P.2d at 527 ("Where an employee at will forgoes options to refuse future performance in reliance or in partial reliance on articulated personnel policies of the employer, the employer is bound by those policies...."). The jury could find that Dresser breached this implied promise by firing Krause while retaining less senior employees in comparable positions.

■ Dresser also argues that any statements made to Krause concerning job security were made without authority sufficient to bind Dresser. Although Kennedy denied having the authority to make or making any assurances to Krause, other evidence clearly suggested that he did make such assurances and spoke on behalf of Dresser when he did so. The district court properly instructed the jury that statements or promises were binding on Dresser only if made with authority, and there was sufficient evidence to support a finding of actual authority.

**B**

■ Defendant asserts that the Oklahoma Statute of Frauds, Okla.Stat.Ann. tit. 15, § 136(1), makes this alleged implied contract unenforceable as "[a]n agreement that, by its terms, is not to be performed within a year from the making" and which

is not evidenced by a writing. As a general rule, a contract for "permanent" employment or employment for life is of indefinite duration and, therefore, not within the Statute. *Restatement (Second) of Contracts* § 130(1) comment a & illustration 2 (1981); *see Roxana Petroleum Co. v. Rice,* 109 Okla. 161, 235 P. 502, 506–07 (1924) (employee to work as long as employer continued in business or until discharged for cause). The Oklahoma Supreme Court held to the contrary in *Dicks v. Clarence L. Boyd Co.,* 205 Okla. 383, 238 P.2d 315, 317–18 (1951) (employee to work as long as able), without overruling *Roxana.* Subsequent decisions of that court have not been consistent and have not advanced any principled ground upon which to distinguish *Dicks* and *Roxana.* Compare *Western Star Mill Co. v. Burns,* 305 P.2d 564, 570–71 (Okla.1956) (following *Dicks* and distinguishing *Roxana*) with *Stolzer v. Beer,* 383 P.2d 686, 690 (Okla.1963) (following *Roxana* and distinguishing *Dicks*). The last time this court was faced with choosing between the two decisions, *Roxana* prevailed. *Cherokee Laboratories, Inc. v. Pierson,* 415 F.2d 85, 92 (10th Cir.1969) (contract to pay retirement benefits for employee's life), *cert. denied,* 396 U.S. 1059, 90 S.Ct. 753, 24 L.Ed.2d 753 (1970); *see also Workman v. Harrison,* 282 F.2d 693, 698 (10th Cir.1960). Without more specific guidance from the Oklahoma Supreme Court, we again follow *Roxana.* The implied contract in this case was of indefinite duration and, therefore, not within the Statute.

**C**

■ Dresser challenges the damage award on the contract claim. Dresser argues primarily that the jury's notation on the verdict form that Krause's lost salary amounted to "$165,984 @ AGE 55" reveals that the jury used an improper method of calculating damages. But we will not speculate as to the jury's calculation methods, as long as the damage amount is supported by the evidence. *See Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1279 n. 19 (3d Cir.1979). Krause's evidence put his damages from lost past and future

salary in excess of $175,000; therefore, we find no error.

■■■■ Dresser also contends that the district court erred in not instructing the jury (1) on Krause's duty to mitigate damages and (2) that severance pay Krause received from Dresser must be offset against Krause's lost salary. Krause testified concerning his extensive nationwide search for employment after he was terminated which finally secured Krause new employment in Michigan at a substantially lower salary. The district court thought that Krause made reasonable efforts to mitigate as a matter of law, and Dresser apparently agreed, as it attempted to stipulate to the reasonableness of the efforts in order to keep the evidence from the jury. Krause satisfied his duty to mitigate as a matter of law, and the district court did not err by refusing to instruct the jury on this issue. Moreover, Krause's calculations of his damages explicitly and clearly deducted the severance pay he received. Therefore, we agree with the district court that there was no need for an instruction concerning offsetting.

### D

■■■■ Dresser's argument that Krause's breach of contract claim is entirely preempted by ERISA, under 29 U.S.C. § 1144(a), is devoid of merit. The district court granted Dresser a directed verdict to the extent that Krause's breach of contract claim sought damages for lost pension, health insurance, or life insurance benefits, as preempted by ERISA. Krause did not cross-appeal this ruling. We are at a loss to see how a breach of contract claim solely for lost salary is at all related to an employee benefit plan. Therefore, we hold that Krause's contract claim is not preempted by ERISA. *See Hartle v. Packard Elec.*, 877 F.2d 354, 355–56 (5th Cir. 1989) (contract action on theory of tenured employment not seeking plan benefits is not preempted by ERISA).

AFFIRMED.